# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHARLES R. MCCARTNEY and
JALYNN MCCARTNEY,

        Plaintiffs,

    v.

PLATTE RIVER INSURANCE
COMPANY, ,

        Defendant.

Case No. 19-cv-6527

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

In this diversity suit, Plaintiffs Charles and JaLynn McCartney sue Platte River Insurance Company, seeking a declaratory judgment that they have no obligation to post collateral or to indemnify Platte River for claims made against surety bonds Platte River issued (count I). [101] at ¶ 11. The McCartneys also claim negligence (count II) and breach of contract (count III), and they sue for novation (count IV) and for relief under § 155 of the Illinois Insurance Code (count V). Platte River moves to dismiss all counts of the operative complaint under Federal Rule of Civil Procedure 12(b)(6), [102]. For the reasons explained below, the Court denies the motion as to counts I and III, but grants the motion as to counts II, IV, and V.

## I. FACTUAL BACKGROUND[1]

Charles McCartney ("Charles") served as the president and controlling

---

[1] The Court draws these alleged facts from Plaintiffs' Third Amended Complaint, which clocks in at 259 paragraphs, and 42 pages, plus another 650+ pages of exhibits, [101].

shareholder of United Skys, Inc., an Illinois corporation. [101] ¶¶ 2, 3. In March of 2016, Ironwood Insurance Services and its employee Eric Ragone began a business relationship with a private equity fund that ultimately formed United Skylights, LLC to purchase United Skys, LLC's membership units from United Skys Holdings, Inc.; Charles formed United Skys Holdings, Inc., on April 27, 2016 to own (and sell) United Skys, LLC's membership units, once United Skys, LLC, was formed. *Id.* ¶ 3. On May 2, 2016, United Skys, Inc. merged with CM Merger, LLC to become United Skys, LLC, and United Skys, Inc. ceased to exist. *Id.* ¶¶ 2, 5. On May 6, 2016, United Skys Holdings, Inc. sold all of its membership units in United Skys, LLC's to United Skylights, LLC. [101] ¶ 2. From May 6, 2016, to September 22, 2017, Charles owned 10% of United Skylights, LLC's membership units, and he served as a consultant to United Skys, LLC from May 6, 2016, through November 2016. *Id.* ¶¶ 2, 15. The Letter of Intent signed by the private equity fund that formed United Skylights, LLC, stated that, from June 30, 2015, through the date of United Skylights, LLC's purchase of United Skys, LLC, Charles continued to conduct United Skys, Inc.'s business in the ordinary course and in a manner consistent with past practices. *Id.* ¶¶ 52, 53.

Platte River's relationship with the McCartneys and United Skys began in 2008. On January 18, 2008, United Skys, Inc. entered into a subcontract to manufacture and install metal framed skylights at a construction project located in Cherry Hill, New Jersey. *Id.* ¶ 24. Between January 18, 2008 and April 8, 2008, United Skys, Inc. requested that Platte River issue performance and labor and

material payments bonds for the Cherry Hill project on United Skys, Inc.'s behalf. *Id.* ¶ 25. As a condition precedent to issuing the bonds, Platte River required that United Skys, Inc., Charles, individually, and JaLynn, individually, execute a General Indemnity Agreement.[2] *Id.* ¶ 26.

On April 8, 2008, they did so. *Id.* ¶ 27. The 2008 General Indemnity Agreement,[3] executed by Charles (both individually and as President of United Skys, Inc.) and JaLynn (together, the "Undersigned"), named Platte River as surety and United Skys, Inc., Charles, and JaLynn as Principals, and required "the Undersigned" to indemnify Platte River "against all demands, claims, loss, costs, damages, expenses and fees including any attorneys' fees whatsoever, and for and from any and all liability therefore, sustained or incurred by the Surety" on any bonds "executed for or at the request of the Principal or the Undersigned . . . ." [101] at 44–47.

Three days after Charles and JaLynn signed the 2008 General Indemnity Agreement, Platte River executed Performance and Labor and Material Payment Bond 40434527 in connection with the Cherry Hill project. *Id.* ¶ 38. No claims were ever made against that bond, and Platte River closed it at some point in 2009 or 2010. *Id.* ¶¶ 39, 40.

---

[2] The operative complaint does not explain JaLynn's role in United Skys, Inc., but she unquestionably signed the 2008 Indemnity Agreement.

[3] Plaintiffs attached the General Indemnity Agreement (along with numerous other documents) to their complaint; it is thus considered part of the pleading, and the Court may consider it. *E.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

Consistent with his obligations under the Letter of Intent, in the first quarter of 2016, Charles entered into various subcontracts, *id.* ¶ 54; past practice and bonding requirements indicate that, in connection with these subcontracts, someone would have had to request surety bonds. But Plaintiffs allege that they did not request any bonds from Platte River other than the Cherry Hill bond.

Instead, Plaintiffs allege that, at some point prior to March 7, 2016, the individuals who formed United Skylights, LLC became aware that general contractors often required subcontractors to secure bonds guaranteeing their performance and payment, and they contacted Eric Ragone to discuss Ironwood brokering bonds. *Id.* ¶¶ 57–58. On March 7, 2016, Ragone emailed Platte River to advise that the representatives of a private equity fund were purchasing 100% of the stock of United Skys, Inc. and contemplated that the new company would enter into a bond program with Platte River under which Platte River would provide up to $2,000,000 of coverage for a single performance and payment bond, and an aggregate amount of $3,000,000 for performance and payment bonds; Ragone also advised in that email that "the owner and senior management will continue to operate the company under the supervision of a new President." *Id.* ¶ 65. Plaintiffs allege that Ragone's representation was not accurate, *id.,* and that Charles stopped operating the company after the sale of United Skys to the private equity fund closed. *Id.* ¶ 67.

On and around April 27, 2016, Ragone and Jessica Boone, an underwriter at Platte River, communicated about Platte River bonding three projects: the Scheels

Johnston Project, the LANOIA Canopies Project, and the LANOIA Skylights Project.[4]
*Id.* ¶¶ 8, 74. Consistent with his obligation under the Letter of Intent to conduct
United Sky's Inc.'s business, Charles entered into subcontracts concerning all three
of these projects.[5] *Id.* ¶ 54. Ragone advised Platte River (through Boone) on April
27, 2016, that Charles continued to serve as President of the company and that he
would continue to so serve for a period of five years. *Id.* ¶ 75. According to Plaintiffs,
Ragone's representation was not accurate. *Id.*

Although Platte River had previously declined to issue bonds at the equity
fund's proposed terms (based upon the lack of available post-closure financial
information), on April 29, 2016, Platte River approved the issuance of bonds for all
three projects conditioned upon certain requirements. These requirements included
that the new company: (1) provide audited 2016 financial statements; (2) post
$500,000 in collateral; (3) sign a general indemnity agreement; and (4) agree to pay
a rate of 3% for the bonds. *Id.* ¶¶ 68–70, 77.[6] The parties then executed the 2016
General Indemnity Agreement, which identifies Platte River as the Surety; United

[4] The "Scheels Johnstown Project" was an all-sports retail location that was being constructed in Johnstown, Colorado; and the LANOIA projects related to canopy and skylight glazing work performed for the North Terminal Project at the Louis Armstrong International Airport in New Orleans, LA. [101] ¶ 54.

[5] The LANOIA subcontracts name United Skys, Inc. as the subcontractor, [101] at 112, and Charles signed the agreements on behalf of United Skys, Inc. on December 15, 2015, and February 22, 2016. [101] at 113, 205, 211.

[6] On May 31, 2016, Ragone, as Platte River's agent, executed Platte River performance and payment bond 41350343 for the Scheels Johnstown Project, and, on August 12, 2016, Ragone, as Platte River's agent, executed Platte River performance and payment bond 41350367 concerning the LANOIA Canopies Project and performance and payment bond 41350368 concerning the LANOIA Skylights Project; all three bonds identified United Skys, Inc. as the Principal. [101] ¶¶ 140, 154.

Skylights, LLC as the Principal; Technica and United Skys, LLC as the Indemnitors; and United Skylights, LLC, Technica, and United Skys, LLC collectively as the Undersigned. *Id.* ¶¶ 103, 107–08; [101-1] at 48–52.[7] William Glastris executed the 2016 General Indemnity Agreement on May 12, 2016, in his capacity as Vice President of United Skylights, LLC, United Skys, LLC, and Technica. *Id.* ¶ 103.

Under the Agreement, an Undersigned's duty to indemnify the Surety arises from bonds the Surety has executed at the request of a Principal or Undersigned. *Id.* ¶ 110. Plaintiffs claim that they are not named in or bound by the 2016 General Indemnity Agreement, and they allege that they never agreed to indemnify Platte River for liabilities arising from claims against bonds Platte River issued at United Skys, LLC's request. *Id.* ¶¶ 116, 118. They also allege that United Skys, Inc. could not have agreed to indemnify Platte River for liabilities arising from claims against bonds Platte River issued at United Skys, LLC's request, because United Skys, Inc. ceased to exist on May 2, 2016, when United Skys, LLC was formed. *Id.* ¶ 119.[8]

Plaintiffs allege that, despite the above, from May 31, 2016, through August 12, 2016, at United Skys, LLC's request, Platte River issued three payment and performance bonds that identified United Skys, Inc. as the Principal (the Scheels Johnstown Bond, the LANOIA Canopies Bond, and the LANOIA Skylights Bond). *Id.*

---

[7] The 2016 General Indemnity Agreement, like the 2008 General Indemnity Agreement, is attached to the operative complaint and thus part of the pleading, appropriately considered today. *Chicago Dist. Council of Carpenters Welfare Fund*, 474 F.3d at 466.

[8] Evidence attached to the third amended complaint suggests that United Skys, Inc. *would* continue to exist post-merger, *see* [101] at 226, 229 (showing that "United Skys, Inc. retains its Tax ID number" and that the name of the operating company will be preserved).

¶¶ 128–29.  United Skys, LLC performed almost all of the work associated with these three bonds (United Skys, Inc. performed some engineering work prior to May 6, 2016), which Donald Hempson executed (Mr. Hempson became United Skys, LLC's Chief Executive Officer on May 6, 2016).  *Id.* ¶¶ 130, 142, 155.  Plaintiffs allege that, when Platte River issued each bond that identified United Skys, Inc. as the Principal, it knew or should have known that United Skys, Inc. ceased to exist as an entity on May 2, 2016.  *Id.* ¶ 136. United Skys, LLC paid the bond premium invoice for each of these bonds, and Ironwood delivered each bond to United Skys, LLC.  *Id.* ¶¶ 138–39.

From June 29, 2017, through November 6, 2018, Platte River issued seven more payment and performance bonds identifying United Skys, LLC as the Principal. *Id.* ¶ 167.  United Skys, LLC requested each of these bonds and agreed to perform the work associated with each of them.  *Id.* ¶ 168.  Hempson executed all of these bonds as Principal on United Skys, LLC's behalf.  *Id.* ¶¶ 9, 172.  As alleged, neither Charles nor JaLynn directed or authorized Hempson to execute any of these bonds. *Id.* ¶ 173.  Indeed, Plaintiffs allege that, since September 22, 2017, neither Charles nor JaLynn have had any direct or indirect ownership interest in United Skylights, LLC, United Skys, LLC, or Technica Builders, Inc.  *Id.* ¶ 166.[9]

Beginning in March 2019, Platte River received claims against the bonds

---

[9] This allegation suggests that Plaintiffs may have been involved in the work or bond requests prior to September 22, 2017, which supports Platte River's attempt to enforce the Scheels and LANOIA bonds, all issued in 2016, as well as any claim for indemnification on performance and labor and material bond number 41370728, issued June 29, 2017.

issued to United Skys, Inc. (including the LANOIA Canopies Bond and the LANOIA Skylights Bond). *Id.* ¶¶ 180, 185. For example, in March of 2019, Acurlite Structural Skylights, Inc. filed a claim against the LANOIA Canopies Bond;[10] Platte River assigned claim number 00194282-02 and, on March 6, 2019, sent a letter to United Skys, Inc., Charles, JaLynn, and United Skys, LLC to provide notice of the Acurlite Claim. *Id.* ¶¶ 188, 191. Charles responded with an email on March 11, 2019, advising that Platte River should contact Hempson. *Id.* ¶ 193. Charles and Platte River's surety claims counsel, Ron Wills, also spoke by telephone, and Wills' claims file indicates that Charles referred him to Hempson, who was "the CEO at the Principal." *Id.* ¶¶ 12, 194–95.

On July 1, 2019, United Skys, LLC suspended business operations, *id.* ¶ 199, and notified its creditors that Wintrust would be conducting a Uniform Commercial Code foreclosure sale of United Skys, LLC's assets. *Id.* ¶¶ 199–200.

On July 26, 2019, Platte River, through its attorneys, sent a Collateral and Indemnification Demand to United Skys, Inc., Technica, the McCartneys, United Skys, LLC, and United Skylights, LLC concerning certain claims against bonds Platte River issued that identified United Skys, Inc. and United Skys, LLC as Principal, demanding $1,000,000 in collateral pursuant to the 2008 and 2016 Indemnity Agreements. *Id.* ¶¶ 201–02. The McCartneys responded, generally

---

[10] Plaintiffs assert that Acurlite performed work on the LANOIA Skylights Project, not the LANOIA Canopies Project, but the distinction makes no difference for purposes of the present motion. [101] ¶¶ 189–90.

advising Platte River that United Skylights, LLC had purchased 100% of United Skys, LLC's membership units from United Skys Holdings, Inc. *Id.* ¶ 204. Platte River, in turn, responded to the McCartneys that the bonds "were issued prior to the McCartney's Withdrawal from General Indemnity Agreement dated March 21, 2019" and Platte River would accordingly "look to the McCartneys, along with the other indemnitors, to satisfy" the $1,000,000 demand for collateral "and the full extent of any losses Platte River suffers as a result of claims against" those bonds. *Id.* ¶ 208.

Plaintiffs allege that their withdrawal from the Indemnity Agreement on March 21, 2019, had "no impact on whether the McCartneys are obligated to indemnify Platte River" because neither they, nor United Skys, Inc., requested any of the bonds on which claims were made. *Id.* ¶ 209. They also assert that they did not sign the 2016 General Indemnity Agreement, and thus were never bound by it. *Id.* ¶ 210.

On October 1, 2019, the McCartneys sued Platte River, [1]. In the operative complaint [101], which is the third amended complaint, they seek, in count I, a declaratory judgment that they are not obligated to post collateral with, or indemnify, Platte River for claims made against any of the bonds that identified United Skys, Inc. or United Skys, LLC as Principal. [101] at 36. They also sue for negligence (count II), based upon Platte River's failure to accurately draft and issue the LANOIA Canopies Bond and the LANOIA Skylights Bond to properly identify the entity that requested those bonds as the Principal on such bonds, *id.* at 36–37, and for breach of

the United Skys, Inc. Indemnity Agreement (count III), based upon Platte River's identification of United Skys, Inc. as the Principal on bonds that United Skys, LLC requested (including the Scheels Johnstown Bond, the LANOIA Canopies Bond, and the LANOIA Skylights Bond), *id.* at 37–38. Plaintiffs also sue for novation (count IV), arguing that the execution of the 2016 General Indemnity Agreement extinguished all of the McCartneys' obligations under the 2008 General Indemnity Agreement, *id.* at 38–39, and for relief under § 155 of the Illinois Insurance Code (count V), arguing that Platte River's demand for collateral and indemnification lacks a reasonable basis in fact or law, *id.* at 40–42.

While Plaintiffs' initial complaint was pending,[11] Platte River filed a counterclaim [19], seeking indemnification for all claims on the surety bonds issued on behalf of United Skys, Inc. (count I) and specific performance of the terms of the 2008 Indemnity Agreement (in particular, the term requiring the McCartneys to post collateral to secure the pending claims (count II).

Plaintiffs subsequently amended their complaint to seek a declaratory judgment that they have no obligation to post collateral or indemnify Platte River for claims on bonds issued after May 6, 2016 (count I) and claiming negligence (count II), novation (count III), and relief under § 155 of the Illinois Insurance Code (count IV). [86].

---

[11] Plaintiffs' initial complaint asserted two counts, both seeking a declaratory judgment concerning the scope of the McCartneys' obligation to post collateral and indemnify Platte River. [1]. Platte River answered this complaint, [19].

Platte River moved to dismiss, [90], and Plaintiffs amended again, filing the third amended complaint on December 23, 2021 [101].

Platte River again moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the third amended complaint "ignores the effect of the merger that created United Skys, LLC and the continuing obligation of LLC as the 'undersigned' on the 2008 indemnity agreement." [103] at 1.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022). In deciding the motion, this Court must construe the operative complaint in the light most favorable to Plaintiffs, accept as true all well-pleaded facts, and draw all reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). The Court, however, need not accept as true legal conclusions. *Yeftich*, 722 F.3d at 915.

To survive, Plaintiffs' complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the factual allegations required to state a plausible claim for relief depends upon the complexity of the case, threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, will not suffice. *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

## III. ANALYSIS

Platte River moves to dismiss the entire third amended complaint, and the Court considers the parties' arguments as to each claim below.

### A. Plaintiffs' Declaratory Judgment Claim (Count I)

In count I, Plaintiffs seek a judgment declaring that they have no obligation to post collateral with Platte River or to indemnify Platte River for claims on any bonds issued after May 6, 2016 that identified either United Skys, Inc. or United Skys, LLC as the Principal. Platte River seeks to dismiss this claim, arguing that it ignores the substance of the merger that created United Skys, LLC and ignores the key terms of the 2008 General Indemnity Agreement.

Taking the latter first, Platte River argues that, under the 2008 General Indemnity Agreement, Plaintiffs maintained a continuing obligation to indemnify it. The Court thus turns to the Agreement to determine the nature of the parties' obligations. And if the Agreement contradicts Plaintiffs' allegations, the Agreement controls. *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) ("To the extent that the contracts contradict the Complaint, the contracts trump the facts or allegations presented in the Complaint.").

The 2008 General Indemnity Agreement, [101] at 44–47, provides, at § 2, as follows:

> The Undersigned . . . shall and will indemnify . . . the Surety against all demands, claims, loss, costs, damages, expenses and fees including any attorneys' fees whatsoever, and for and from any and all liability therefore, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond(s), or any other Bond(s), which maybe already or hereafter are executed for or at the request of the Principal or the Undersigned or any of them, or renewal or continuation thereof. . . .

[101] at 44. The Agreement names Platte River as the Surety, names United Skys, Inc., Charles, and JaLynn as Principals, and identifies all three as "the Undersigned." *Id.* at 47. Thus, if Platte River issued bonds for or at the request of United Skys, Inc., Charles, or JaLynn, then Plaintiffs likely would remain liable. And, conversely, if Platte River issued bonds for or at the request of someone other than these three, the 2008 Agreement likely would not provide a basis for liability. To the latter point, the 2008 General Indemnity Agreement also includes a "continuing obligation" provision, pursuant to which the three could still be liable on bonds issued prior to the effective date of any withdrawal from the Agreement. [101] at 46. But that provision, of course, does not impose liability for bonds issued for or at the request of another.

Plaintiffs allege that they requested just one bond from Platte River (the 2008 Cherry Hill Bond, [101] ¶ 41), and that they never requested the issuance of any bonds after May 6, 2016, *id.* ¶ 4. They also allege that, effective May 2, 2016, United Skys, LLC assumed all of United Skys, Inc.'s liabilities, and that neither Charles nor JaLynn agreed to indemnify Platte River for liabilities arising from claims against bonds Platte River issued at United Skys, LLC's request. [101] ¶¶ 88, 119. Based upon these allegations, accepted as true at this point, a jury could reasonably find

13

that Plaintiffs have no obligation to post collateral or indemnify Platte River for any of the bonds referenced in the demand letter, all of which were issued on and after May 31, 2016.

Platte River also argues that the conversion of United Skys, Inc. to United Skys, LLC was a merger, the effect of which (under Illinois law) is that the debts and obligations of each constituent organization that ceases to exist would then continue as the debts and obligations of the surviving organization.

To the extent Illinois law would apply to the transactions converting United Skys, Inc. into United Skys, LLC, Platte River asserts the correct legal principle: "Under Illinois law, when two corporations merge, the result is a single corporation, the one designated by the merger documents as the surviving corporation"; "the since-merged corporation no longer exists legally," and, upon merger, the surviving corporation becomes responsible and liable for all the liabilities and obligations of each of the corporations so merged.'" *Illinois Ins. Guar. Fund v. Priority Transportation, Inc.*, 146 N.E.3d 155, 171 (Ill. App. Ct. 2019) (citing 805 Ill. Comp. Stat. 5/11.50(a)).

But the documents attached to the third amended complaint show that United Skys, Inc. merged with CM Merger, LLC, not United Skys, LLC.[12] [101] at 263. The

---

[12] Specifically, the McCartneys allege that when United Skys, Inc. merged with CM Merger, LLC, the surviving entity became United Skys, LLC. *See* [101] ¶ 2. But the documents attached to the complaint contradict that proposition. As explained, the Plan of Merger indicates that the surviving entity was CM; the Articles of Organization confirm this fact, [101] at 257, 260, 262 (identifying the name of the LLC as "CM Merger, LLC"). The complaint, however, fails to attach documents evidencing the formation of United Skys, LLC, or documents explaining whether or how CM Merger, LLC became United Skys, LLC.

14

Plan of Merger for the transaction provided that, at the time of the merger, United Skys "shall be merged with and into CM with CM surviving such Merger." [101] at 263. The Plan also provided that, at the time of the merger, "all debts, liabilities and duties of the Constituent Entities shall thenceforth attach to the surviving entity and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." *Id.* If Platte River were seeking to enforce the 2008 Indemnity Agreement against CM Merger, it could make a strong case. But it is not. Nor for that matter is it seeking to enforce anything against United Skys, LLC.

Rather, Platte River seeks to hold the McCartneys liable for bonds issued for or on behalf of United Skys, Inc. and United Skys, LLC after the merger. And the tangled web of corporate formalities described in the third amended complaint and attached exhibits masks any clear thread connecting the McCartneys to United Skys, LLC. Certainly, given the state of the pleadings, Platte River has not drawn a line so bright that the Court can dismiss this count at this early stage. [101] ¶ 75. For example, even though United Skys, LLC's operating agreement provides that Illinois law governs, [101] at 267, neither the agreement nor the law explain how or whether CM Merger's post-merger obligations on the bonds (naming United Skys, Inc. as Principal) passed to United Skys, LLC, or whether Platte River can otherwise look to the McCartneys to cover United Skys, LLC's indemnification obligations. Perhaps

discovery will clarify such issues for resolution at summary judgment, but for now, this Court must decline to dismiss count I.

### B.  Plaintiffs' Negligence Claim

In count II, Plaintiffs allege that Platte River had a duty to accurately draft and issue the LANOIA Canopies Bond and the LANOIA Skylights Bond to identify the proper party as Principal, and that, in breach of that duty, Platte River named United Skys, Inc. as Principal when it should have named United Skys, LLC.  [101] ¶¶ 224–25.  As a result, they allege they sustained damages, including potential exposure to Platte River's demand for collateral and indemnification, as well as attorneys' fees, interest, costs, and other pecuniary damages.  *Id.* ¶ 226.  Platte River argues that the *Moorman* doctrine precludes Plaintiffs' negligence claim.  Plaintiffs disagree.

The *Moorman* doctrine, also known as the economic loss doctrine, "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations."  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Manufacturing Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448–49 (Ill. 1982).  *See also Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 94 (Ill. App. Ct. 2002) ("In a nutshell, [the *Moorman* or economic loss] doctrine bars a plaintiff from recovering in negligence for losses which are purely economic, that is, do not involve personal injury or property damage," as "tort law is not intended to

compensate parties for monetary loses suffered as a result of duties which are owed to them simply as a result of a contract.").

A number of exceptions to the doctrine exist, "each rooted in the general rule that 'where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.'" *Wigod*, 673 F.3d at 567 (citing *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994)). To determine "whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Id.* at 567–68 (citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011); *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 351 (Ill. 1990)).

Plaintiffs do not assert a particular exception to the doctrine, arguing instead that the doctrine does not apply, because Plaintiffs damages do not arise from the bonds; rather, they arise from Platte River's decision to issue bonds in the name of an entity that no longer existed. But any obligation concerning the identity of the signatories on the bonds arises from the bonds and the indemnity agreements—the contracts, in other words. In short, Plaintiffs' negligence claim alleges that Platte River issued bonds to someone it should not have *under the terms* of the parties' Agreement. As alleged, this remains a contractual claim, barred by the *Moorman* doctrine, and the Court thus dismisses count II.

### C.   Plaintiffs' Breach of Contract Claim

In count III, the McCartneys allege that Platte River had a duty under the 2008 General Indemnity Agreement to only identify United Skys, Inc. as the Principal on bonds that United Skys, Inc., Charles, JaLynn, or any of their agents requested, and that Platte River breached that duty when it identified United Skys, Inc. as the Principal on bonds that United Skys, LLC requested.  [101] ¶¶ 230–31.  As a result of this breach, the McCartneys allege that they sustained damages, including potential exposure to Platte River's demand for collateral and indemnification.  *Id.* ¶ 232.

Platte River seeks to dismiss this count, because it should have been asserted as a compulsory counterclaim to the counterclaim originally filed by Platte River, and because it makes no difference whether the bonds were issued to United Skys Inc. or United Skys, LLC.  On the latter point, Platte River argues that the 2008 General Indemnity Agreement does not restrict who may be named as the principal on bonds issued thereunder, and Platte River remained free to write a bond for any principal requested by an undersigned.

To the extent Plaintiffs' breach of contract claim constitutes a compulsory counterclaim to Platte River's indemnification and specific performance claims, the Court declines to dismiss it under Rule 13, as Plaintiffs nonetheless assert the claim in the same action.  Dismissal under these circumstances would place form over substance.  *See, e.g., Fagnan v. Great Central Ins. Co.*, 577 F.2d 418, 420 (7th Cir.

18

1978) (holding that an unasserted compulsory counterclaim becomes "extinguished by the judgment" in the action in which it should have been asserted and that Rule 13(a) bars assertion of the extinguished claim in a *subsequent* action) (emphasis added).

As to Platte River's argument concerning the appropriate principals under the 2008 General Indemnity Agreement, the current allegations suffice. As explained above, the 2008 General Indemnity Agreement required Plaintiffs to indemnify Platte River "against all demands, claims, loss, costs, damages, expenses and fees including any attorneys' fees whatsoever, and for and from any and all liability therefore, sustained or incurred by" Platte River on bonds "executed for or at the request of the Principal or the Undersigned or any of them, or renewal or continuation thereof." [101] at 44. Although, consistent with the Agreement, Platte River *could* issue a bond for or on behalf of another Principal if requested by the Undersigned, the McCartneys allege that they made no such requests. *See id.* ¶¶ 4, 41, 187, 209, 220, 248.

As a result, the Court finds that the McCartneys have plausibly alleged that Platte River breached the 2008 General Indemnity Agreement when it issued bonds naming United Skys, Inc. as a principal at the request of someone other than the individuals and entity named as principals and undersigned in that agreement. Accordingly, the Court declines to dismiss Plaintiffs' breach of contract claim.

### D. Plaintiffs' Novation Claim

In count IV, Plaintiffs allege that the 2016 General Indemnity Agreement, executed May 12, 2016, "extinguished all of Charles and JaLynn's obligations" under the 2008 General Indemnity Agreement, and thus they had no obligation to post collateral with Platte River or indemnify Platte River for claims on any of the bonds referenced above, all issued after May 12, 2016. [101] ¶ 235. Platte River seeks dismissal of this claim, arguing that novation is not a recognized cause of action. Plaintiffs disagree.

To be sure, cases discussing novation generally involve the assertion as an affirmative defense, rather than a standalone claim. *E.g., Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 882–83 (7th Cir. 2005); *Astra Cap., LLC v. BCI Aircraft Leasing, Inc.*, No. 17 C 6431, 2019 WL 2248526, at *4 (N.D. Ill. May 24, 2019) (discussing defendants' claim that they were entitled to summary judgment on plaintiff's breach of contract claim based upon novation); *Craig J. Duchossois Revocable Tr. UAD 9/11/1989 v. CDX Lab'ys, Inc.*, 495 F. Supp. 2d 869, 870 (N.D. Ill. 2006) (discussing the affirmative defense of novation); *Champaign Nat. Bank v. Babcock*, 652 N.E.2d 848, 851 (Ill. App. Ct. 1995) (affirming the dismissal of the affirmative defense of novation).

At least one Illinois appellate court has suggested, however, that novation may be raised as a standalone claim. In *Crest Hill Land Development, LLC v. Conrad*, 127 N.E.3d 958, 966 n.6 (Ill. App. Ct. 2019), the Illinois Appellate Court noted, in a

footnote, that "although a novation is generally raised as an affirmative defense, there does not appear to be any reason why Conrad could not raise it as a counterclaim in this case, where Conrad was seeking affirmative relief on the basis of the novation, rather than to merely defeat CHLD's claims."

But this case is not *Conrad*, and to the extent a plaintiff *can* assert a standalone claim for novation, the McCartneys fail to do so here. Instead, they assert novation as a means of undermining Platte River's claim that they owed money under the 2008 General Indemnity Agreement. Rather than seek affirmative relief, the McCartneys seek a declaration that the 2016 General Indemnity Agreement constitutes a novation of the 2008 General Indemnity Agreement such that they have no outstanding obligation to post collateral or indemnify Platte River for the bonds on which it seeks to collect. [101] at 38–39. The Court thus dismisses count IV, though Plaintiffs may still pursue their novation theory as an affirmative defense, [23] at 8–10, asserted in response to Platte River's counterclaim.

### E.    Plaintiffs' § 155 Claim

In count V, Plaintiffs claim that Platte River's demand for collateral and indemnification had no reasonable basis in law or fact, and thus was vexatious and unreasonable, in violation of § 155 of the Illinois Insurance Code. Platte River seeks to dismiss this claim, arguing that the Illinois Insurance Code does not apply to this dispute. Again, Plaintiffs disagree.

21

As Plaintiffs correctly note, the Illinois Appellate Court did say, in 1984, that "contracts of compensated suretyship are treated as contracts of insurance," suggesting that § 155 could apply here. *Fisher v. Fid. & Deposit Co. of Maryland*, 466 N.E.2d 332, 339 (Ill. App. Ct. 1984). But the court also held, more than 10 years later, that § 155 "extends only to the party insured" and does not apply to a claim on a surety bond. *Premier Elec. Const. Co. v. American Nat. Bank of Chicago,* 658 N.E.2d 877, 891 (Ill. App. Ct. 1995). Recognizing the apparent conflict in Illinois law, at least one judge in this district has found *Premier* persuasive: in *Cincinnati Ins. Co. v. Plumbers' Pension Fund, Loc. 130, U.A.*, No. 09 C 2753, 2010 WL 11667908, at *2 (N.D. Ill. June 8, 2010), Judge Nordberg applied *Premier* over *Fisher* because it was decided more recently and because of the larger policy arguments regarding the differences between surety contracts and insurance policies. This Court follows suit, finds that § 155 does not apply, and thus dismisses count V.

22

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part, and denies in part, Defendant's motion to dismiss [102]. The Court dismisses counts II, IV and V, but declines to dismiss counts I and III. Plaintiffs may proceed on their declaratory judgment and breach of contract claims.

Dated: September 28, 2022

Entered:

John Robert Blakey
United States District Judge

23