UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES R. MCCARTNEY and JALYNN MCCARTNEY,<br><br>    Plaintiffs/Counter-Defendants,<br><br>    v.<br><br>PLATTE RIVER INSURANCE COMPANY,<br><br>    Defendant/Counter-Plaintiff. | Case No. 19-cv-6527<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

In this diversity suit, Plaintiffs Charles and JaLynn McCartney sued Defendant Platte River Insurance Company, seeking a declaratory judgment that they have no obligation to post collateral or to indemnify Platte River for claims made against surety bonds Platte River issued. *See* [101]. In response to the McCartneys' operative complaint, Platte River filed a five-count counterclaim, seeking indemnification on several of the bonds it issued, allegedly on behalf of the McCartneys or on behalf of a company or companies affiliated with or owned by them. [124]. The McCartneys now move to dismiss the indemnification claims as to all but one of the bonds.[1] *See* [129]. For the reasons explained below, and consistent with this Court's prior decision resolving Platte River's motion to dismiss the McCartneys' claims, the Court denies the motion.

---

[1] The McCartneys do not challenge the sufficiency of the allegations pled in count I of Platte River's counterclaim, which seeks indemnification based upon the "Hunt Gibbs Bonds."

I.      **FACTUAL BACKGROUND**[2]

      A.      **The Parties' Relationship**

As part of its business, Platte River Insurance Company issues surety bonds on behalf of contractors to secure certain obligations on private and public construction projects throughout the United States. [124] (Answer) ¶ 19. One such contractor was United Skys, Inc. On April 8, 2008, United Skys, Inc.'s president, Charles McCartney, and his wife, Jalynn McCartney, executed a General Indemnity Agreement with Platte River. In the Agreement, the "indemnitors" (the McCartneys) agreed to reimburse the "surety" (Platte River) "for all losses, costs, and attorneys' fees incurred by reason of execution of surety bonds on behalf of the principal, United Skys, Inc." *Id.* ¶¶ 27, 29; [124] (Counterclaim) ¶ 4; [101] at 44–47.

In May of 2016, United Skys, Inc. merged into CM Merger, LLC, which was subsequently renamed United Skys, LLC. [124] (Counterclaim) ¶ 5. Platte River alleges that, as a result of this merger, United Skys, LLC continued the business of United Skys, Inc. and assumed all of United Skys Inc.'s liabilities and obligations, including its obligations under the 2008 General Indemnity Agreement. *Id.* ¶¶ 5–6.

On May 11, 2016, Platte River and United Skys, LLC executed another General Indemnity Agreement, naming Platte River as the surety and United Skylights, LLC, United Skys, LLC, and Technica Builders, Inc. as principals. [101] at 48–53. Although Charles did not sign the 2016 Agreement, Platte River contends that the 2016 General Indemnity Agreement "did not release or change the 2008

---

[2] The Court draws these facts from Platte River's Counterclaim. [124].

Indemnity Agreement, as that agreement specifically provides for the sole means of terminating the obligations of the Indemnitors—notice to the surety's home office." [124] ¶ 10. Rather, Platte River alleges, consistent with § 18 of the 2008 Agreement, the 2016 Agreement simply expanded the list of indemnitors. *Id.*

Section 18 of the 2008 Agreement,[3] entitled "Continuing Obligation, Release of Indemnity," specifies that the "undersigned":

> understand, recognize and agree that this Agreement is a continuing obligation applying to and for all of the purposes set forth herein coupled with that of indemnification of the Surety as to any and all Bonds (whether or not covered by any separate application signed by Undersigned, and, any such application shall be considered as merely supplemental to this Agreement) heretofore or hereafter executed by the Surety on behalf of the Undersigned (whether acting alone or as a co-adventurer) until this Agreement shall be cancelled according to its terms....

*Id.* ¶ 11.

Platte River alleges that the McCartneys never sent a notice terminating their obligations as indemnitors before the issuance of any of the operative bonds as required by § 18 of the 2008 General Indemnity Agreement and, in fact, did not seek to terminate their liability under the Agreement until March of 2019. *Id.* ¶¶ 9, 10. Indeed, Platte River alleges, the parties to the May 2016 merger sought to shore up Charles' indemnity obligations to Platte River under the 2008 General Indemnity Agreement by inserting indemnity provisions and access to collateral as part of the sale of ownership of United Skys, LLC, and Charles accepted those provisions. *Id.*

---

[3] The provision appears in both the 2008 and 2016 Agreements. [101] at 46; [101-1] at 51

3

¶¶ 15–16. In short, Platte River alleges, Charles remained bound by the Agreement when it issued the bonds described in the counterclaim.

### B.   Platte River's Claims as to the Relevant Surety Bonds

With regard to the bonds, Platte River's counterclaim alleges that it issued performance and payment bonds to United Skys related to five projects. [124]. First, at the request of United Skys, Inc., Platte River issued two performance and payment bonds for work at the New Orleans Airport on a project managed by Hunt Gibbs Boh Metro. *Id.* ¶ 18. The bonds named Hunt Gibbs as obligee and United Skys, Inc. as principal. *Id.* ¶ 18. Charles signed the initial contract documents in September of 2015 and signed additional contract documents in February of 2016, agreeing on behalf of United Skys, Inc. to provide performance and payment bonds for these contracts. *Id.* ¶ 20. United Skys, Inc. performed design work for the contracts and submitted a pay request to Hunt Gibbs for that work in March of 2016. *Id.* ¶ 21. United Skys, Inc. received payment for that work. *Id.* ¶ 21. In March of 2016, Charles procured bonds from Platte River relating to the project. *Id.* ¶ 22. Thereafter, in the midst of the United Skys, LLC merger, the company defaulted on its contract obligations to Hunt Gibbs by failing to pay for labor and materials and failing to perform the contracts in accordance with their terms. *Id.* ¶ 24. Hunt Gibbs then made a demand on Platte River to perform, and the parties supplying labor and materials made claims under the payment bond for the amounts due for labor and materials. *Id.* ¶ 25. Platte River paid $525,164.68 to settle the claims on the Hunt Gibbs bonds. *Id.* ¶ 26. It then recovered $255,621.81 from the oblige. In count I of

its counterclaim, it now seeks to recover the balance ($269,542.87), as well as fees and costs, from the McCartneys. *Id.* at 61–62.

In count II of its counterclaim, Platte River alleges that it issued, at the request of United Skys, LLC, a performance and payment bond for contract work at Shops of Riverside, which named Whiting Turner Construction as obligee. *Id*. ¶ 18. United Skys, LLC subsequently defaulted on the contract, resulting both in a demand from the obligee and demands from claimants for Platte River to perform the work and pay for labor and materials. *Id.* ¶ 19. Platte River paid $724,831.10 to cure the Shops of Riverside default, then recovered $366,730.05 from the obligee, *id.* ¶¶ 20–21; it now seeks to recover the balance ($358,101.05), as well as fees and costs, from the McCartneys. *Id.* at 62–63.

In count III, Platte River alleges that it issued, at the request of United Skys, LLC, a performance and payment bond for contract work at The Colony which named Sampson Construction Co. as obligee. *Id.* ¶ 18. United Skys, LLC again defaulted on the contract, resulting both in a demand from the obligee and demands from claimants for Platte River to perform the work and pay for labor and materials. *Id.* ¶ 19. Platte River paid $143,861.79 on the Colony bond, *id.* ¶ 20, and seeks to recover this full amount, plus fees and costs, from the McCartneys. *Id.* at 63–64.

In count IV, Platte River alleges that it issued, at the request of United Skys, LLC, a performance and payment bond for contract work on Escalator Canopies which named F.H. Paschen as oblige. *Id.* ¶ 18. United Skys, LLC defaulted on the contract, resulting both in a demand from the obligee and demands from claimants

5

for Platte River to perform the work and pay for labor and materials. *Id*. ¶ 19. Platte River paid $409.869.95 on the F.H. Paschen loan, *id*. ¶ 20, and seeks to recover this full amount, plus fees and costs, from the McCartneys. *Id*. at 64–65.

Finally, in count V, Platte River alleges that it issued, at the request of United Skys, LLC, a performance and payment bond for contract work at the University of Kentucky which named Central Kentucky Glass as obligee. *Id*. ¶ 18. United Skys, LLC defaulted on the contract, resulting both in a demand from the obligee and demands from claimants for Platte River to perform the work and pay for labor and materials. *Id*. ¶ 19. Platte River paid $4,000.00 to cure the defaults of the F.H. Paschen loan, *id*. ¶ 20, and Platte River now seeks to recover this full amount, plus fees and costs, from the McCartneys.[4] *Id*. at 65.

### C. The Prior Motion to Dismiss

On October 1, 2019, the McCartneys sued Platte River [1] over their obligations in connection with the various surety bonds, seeking (among other things) a declaratory judgment that they have no obligation to post collateral or to indemnify Platte River for claims made against surety bonds Platte River issued. [101]. Platte River moved to dismiss this claim, [102], and the Court denied the motion. [123].[5]

---

[4] Platte River's counterclaim does not say when it issued the Whiting Turner, Sampson Construction, F. H. Paschen, and Central Kentucky Glass bonds; nor does it mention Charles McCartney's role in the issuance of those bonds. And Platte River failed to attach the bonds to its counterclaim.

[5] Plaintiffs asserted other claims, and the Court granted the motion to dismiss as to some of those other claims. But the other claims and their disposition remains largely irrelevant for present purposes.

Platte River then filed an amended counterclaim, [124], seeking indemnification from the McCartneys for outstanding losses on the above-described bonds. [124]. The McCartneys now move to dismiss four of Platte River's five counterclaims under Federal Rule of Civil Procedure 12(b)(6).[6] [129].

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022). In deciding the motion, this Court must construe the operative complaint in the light most favorable to Plaintiffs, accept as true all well-pleaded facts, and draw all reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). The Court, however, need not accept as true legal conclusions. *Yeftich*, 722 F.3d at 915.

To survive, the challenged pleading must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. For a claim to have facial plausibility, it must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the factual allegations required to state a plausible claim for relief depend upon the complexity of the case, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

---

[6] The McCartneys move to dismiss counts II, III, IV, and V of Platte River's counterclaim; they do not challenge count I, which is Platte River's claim concerning the Hunt Gibbs Bonds.

7

**III. ANALYSIS**

In counts II through V, Platte River seeks monetary damages from the McCartneys based upon the McCartneys' failure to cure the defaults of United Skys, LLC, as required (according to Platte River) under the 2008 General Indemnity Agreement. Platte River alleges that the McCartneys have a continuing obligation to indemnify it under the terms of the 2008 General Indemnity Agreement because all of the bonds referenced in counts II through V were requested by United Skys, LLC, which became a Principal of the Agreement after it merged with United Skys, Inc. in May of 2016.

Platte River alleges that the McCartneys remain bound by the 2008 General Indemnity Agreement because they did not properly terminate their obligations as indemnitors before the issuance of any of the referenced bonds. For their part, the McCartneys argue that they are not responsible for bonds requested by another entity, and that their indemnification obligations ended with the merger.

When this Court ruled on Platte River's motion to dismiss the McCartney's declaratory judgment count, it examined more closely the merger referenced in the pleadings and its impact upon the Indemnity Agreement:

> Platte River seeks to hold the McCartneys liable for bonds issued for or on behalf of United Skys, Inc. and United Skys, LLC after the merger. And the tangled web of corporate formalities described in the third amended complaint and attached exhibits masks any clear thread connecting the McCartneys to United Skys, LLC. Certainly, given the state of the pleadings, Platte River has not drawn a line so bright that the Court can dismiss this count at this early stage. [101] ¶ 75. For example, even though United Skys, LLC's operating agreement provides that Illinois law governs, [101] at 267, neither the agreement nor the law explain how or whether CM Merger's post-merger obligations on the

8

> bonds (naming United Skys, Inc. as Principal) passed to United Skys, LLC, or whether Platte River can otherwise look to the McCartneys to cover United Skys, LLC's indemnification obligations. Perhaps discovery will clarify such issues for resolution at summary judgment, but for now, this Court must decline to dismiss count I.

[123] at 14–15.

Because the record did not permit the Court to determine which entities were liable on the bonds, or how those entities might relate to the McCartneys and their obligations under the 2008 Indemnity Agreement, it was at least plausible that the McCartneys could win on their declaratory judgment claim. To be sure, the Court could not say that the McCartneys could "prove no set of facts that would entitle them to relief under the allegations." Fed.R.Civ.P. 12(b)(6); *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir.1998).

But the flip side of that proposition also holds true. Platte River claims that, whatever the result of the merger, the McCartneys remained liable on bonds issued before March of 2019, when they formally notified Platte River of their withdrawal from the General Indemnity Agreement. Because the argument is supported in the pleadings, as discussed in the Court's prior decision, dismissal under Rule 12(b)(6) remains inappropriate. It remains feasible that the May 2016 merger of United Skys, Inc. and CM Merger, LLC, which ultimately produced United Skys, LLC, as a practical matter, caused United Skys, LLC to assume all of "the liabilities and obligations of United Skys, Inc.'s existing business, including its obligations under the terms of the 2008 General Indemnity Agreement." [124] (Counterclaim) ¶5.

9

The McCartneys argue that Platte River's claims fail as a matter of law because they cannot be required to indemnify Platte River for bonds issued at the request of United Skys, LLC. To support this argument, they represent that United Skys, LLC was not named in the 2008 General Indemnity Agreement, that Agreement could be modified only in writing, and no one ever submitted a written modification adding United Skys, LLC to the list of entities allowed to request bonds from Platte River. *See* [129] at 2.

Nevertheless, the 2008 General Indemnity Agreement, executed by Charles (both individually and as President of United Skys, Inc.) and JaLynn (together, the "Undersigned"), named Platte River as surety and United Skys, Inc., Charles, and JaLynn as Principals, and required "the Undersigned" to indemnify Platte River "against all demands, claims, loss, costs, damages, expenses and fees including any attorneys' fees whatsoever, and for and from any and all liability therefore, sustained or incurred by the Surety" on any bonds **"executed for or at the request of the Principal or the Undersigned** . . . ." [101] at 44–47. Thus, under the plain terms of the Agreement, if United Skys, LLC requested bonds for the McCartneys or for United Skys, Inc., the indemnification provisions would apply.

Additionally, as Plaintiffs acknowledge, in the United Skys, Inc. Indemnity Agreement, United Skys, Inc., Charles, and JaLynn jointly and severally bound themselves, their "heirs, executors, administrators, trustees, successors and assigns; jointly and severally, together with any of its or their subsidiaries, affiliates or divisions now in existence or hereafter formed or acquired" to the United Skys, Inc.

10

Indemnity Agreement with respect to bonds the Surety "executed on the Principal's behalf at the request of an Undersigned." [101] ¶ 30. And Platte River alleges that it issued the challenged bonds "at the request of United Skys, LLC (f/k/a United Skys, Inc.)." Count II, ¶ 18; count III, ¶ 18; count IV, ¶ 18; count V, ¶ 18. Accepting these allegations as true, and in light of the Court's previous findings concerning the ambiguity in the relationship interests between Charles and the various United Skys entities in the current record, Platte River's indemnification claims remain plausible. Indeed, in their complaint, the McCartneys allege that, when United Skys, Inc. merged with CM Merger, LLC, the surviving entity became United Skys, LLC. *See* [101] ¶ 2. This allegation supports Platte River's claim that United Skys, LLC assumed United Skys, Inc.'s obligations under the Agreement.

## IV. CONCLUSION

For the reasons explained above, and consistent with this Court's prior decision resolving Platte River's motion to dismiss the McCartneys' claims, [123], the Court denies the McCartneys' motion [129] to dismiss counts II, III, IV, and V of Platte River's counterclaim, [124].

Dated: September 25, 2023     Entered:

_____
John Robert Blakey
United States District Judge